UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MHA LONG TERM CARE NETWORK, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:23CV1436 JAR ) |
| EXPRESS SCRIPTS, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Express Scripts, Inc.'s ("Express Scripts") motion to dismiss. ECF No. 33. Plaintiff, MHA Long Term Care Network, Inc. ("MHA"), filed its response in opposition, to which Express Scripts filed a reply. The motion is fully briefed and ready for disposition. For the reasons set forth below, Express Scripts' motion will be granted in part and denied in part.

**Background and Facts**

MHA's Amended Complaint [ECF No. 29] alleges, in pertinent part,[1] that it operates as a Pharmacy Services Administrative Organization ("PSAO"). As a PSAO, MHA represents the largest group of long-term care pharmacies in the United States. MHA negotiates contracts with Pharmacy Benefit Managers ("PBMs") on behalf of pharmacies (the "MHA Membership") as their contracting agent. As such, MHA has the authority to bind its pharmacies in the MHA Membership to the contracts it negotiates with PBMs and has a right to enforce compliance with

---

[1] Unless otherwise noted, all facts in this section are alleged in MHA's Amended Complaint and accepted as true for purposes of this motion only. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).

the terms and conditions of these contracts and to collect amounts owed to the MHA Membership in circumstances where PBMs fail to make sufficient payments.

As a PBM, Express Scripts processes prescription medication claims under patients' health insurance for different third parties including insurance plan sponsors, which include commercial insurance plans, Medicare plans, and Medicaid plans. Express Scripts essentially serves as an intermediary between plan sponsors and pharmacies.

In 2005, MHA and Express Scripts entered into a Pharmacy Services Agreement ("PSA"), pursuant to which Express Scripts recognized MHA as a PSAO and permitted the MHA Membership to participate in Express Scripts' Medicare pharmacy networks. Pursuant to the PSA, each of the pharmacies in the MHA Membership is required to enter into a Long-Term Care Agreement with Express Scripts. MHA and Express Scripts have entered into at least two Amendments to the PSA, most recently in 2021 (collectively, the "Contract").

MHA claims that Express Scripts failed to make accurate payments and improperly reconciled prescription drug claims pursuant to the PSA in 2022 and 2023. Further, MHA alleges that Express Scripts refused to engage in good faith negotiations with MHA as to Express Scripts' 2024 Medicare Part D reimbursement terms and conditions in violation of the PSA. Finally, MHA states that in 2024, Express Scripts sent solicitations to the MHA Membership directly and without MHA's prior notice or consent in an effort to circumvent the business and contractual relationship between MHA and its pharmacies in the MHA Membership.

Accordingly, MHA filed this action against Express Scripts, alleging breach of contract (Counts I-VI, XI), breach of the implied covenant of good faith and fair dealing (Count VII), tortious interference with contractual and business relationship (Count VIII), violation of the Missouri Uniform Trade Secrets Act (Count IX), violation of the federal Defend Trade Secrets Act (Count X), and seeking declaratory judgment (Count XII). Express Scripts filed the instant

motion, pursuant to Federal Rules of Civil Procedure 12(b)(6), requesting that the Court dismiss all Counts of MHA's Amended Complaint.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds of its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. On a motion to dismiss, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation omitted). Rather, a claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## Discussion

At the outset, it should be noted that MHA's Amended Complaint borders on violating

3

federal pleading standards. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d) requires that "[e]ach allegation must be simple, concise, and direct." MHA's Amended Complaint is 72 pages long and contains 283 numbered paragraphs. Further, the Amended Complaint does not begin listing the specific claims until page 53 (paragraph 191). The content of the Amended Complaint from page 53 to page 71 is just concise and direct enough to avoid violating Rule 8. *Cf. Georgeoff v. Barnes*, No. 2:09CV00014 ERW, 2009 WL 2757042, at *1 (E.D. Mo. Aug. 26, 2009). Thus, the Court will not dismiss the Amended Complaint on that basis. However, the Court advises MHA to be as succinct as possible in future pleadings.

        <u>Breach of Contract - Payment and Reconciliation (Counts I and II)</u>

The parties do not dispute that Missouri substantive law applies in this case, as the relevant Contract specifies that the parties' rights and obligations are governed by Missouri law. To prevail on a breach-of-contract claim under Missouri law, the plaintiff must prove "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012).

The existence of a valid Contract between the parties is not disputed, but Express Scripts denies that it breached or failed to perform any obligations under the Contract. Specifically, Express Scripts argues that MHA's Amended Complaint did not sufficiently identify the particular contractual provisions that Express Scripts allegedly breached and thus could not state a claim for breach of contract. In its Amended Complaint, however, MHA alleges that Express Scripts failed to make accurate payments and improperly reconciled claims in accordance with Sections 1.6, 3.1, 4.3, and 4.4 of the Contract, resulting in millions of dollars in contractual damages. In its reply, Express Scripts contends that these provisions do not require it to issue

4

accurate and complete payments on such claims.

The Court finds that MHA adequately alleges that Express Scripts breached the Contract by failing in its obligation to make accurate payments and improperly reconciled claims under Sections 1.6, 3.1, and 4.3 of the Contract, which resulted in damages. ECF No. 25-2 at 7-10. The Court is not reviewing the merits of the breach of contract claims at this stage of the proceedings. These are matters to be determined by the evidence. *See, e.g., HM Compounding Services, Inc. v. Express Scripts, Inc.*, No. 4:14-CV-1858 JAR, 2015 WL 4162762, at *13 (E.D. Mo. July 9, 2015). The Court finds that Counts I and II are sufficiently pled and will therefore deny Express Scripts' motion to dismiss the same.

<u>Breach of Contract –Various State Laws and Prompt Payment Laws (Counts III and IV)</u>

"Under Missouri law, to incorporate terms into a contract by reference, the intent to incorporate must be clear, and the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond a doubt." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Products, Inc.*, 887 F.3d 413, 415 (8th Cir. 2018) (citing *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810-11 (Mo. 2015) (internal citation and quotation marks omitted).

In Count III of its Amended Complaint, MHA states that Express Scripts breached the Contract by violating state statutes of New Jersey,[2] Maryland,[3] New Hampshire,[4] and Texas.[5] Contrary to MHA's assertion, however, the various state laws it cites may not be incorporated into the Contract merely by implication; rather, under Missouri law, such laws must be clearly referenced in a contract to be incorporated. *State ex rel. Hewitt v. Kerr*, 461 S.W.3d at 810-11

---

[2] N.J.S.A 17B:27F-7.
[3] MD. Ann. Code. § 15-1628.3(b).
[4] N.H. Rev. Stat. § 402-N:4.
[5] Texas Insurance Code § 1369.553

5

("To incorporate terms from another document, the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond a doubt.") (internal citation and quotation marks omitted). These state statutes are not referenced in the parties' Contract. Moreover, given the fact that the parties agreed to be governed by Missouri law, there is no basis for MHA's insistence that these other state laws are applicable to this dispute and are implied as part of the Contract. *See, e.g., Trilogy Health Care, LLC v. Medco Health Sols., Inc.*, No. CIV.A. 13-550 SRC, 2013 WL 4832708, at *2 (D.N.J. Sept. 10, 2013) (finding that the plaintiff failed to show how various state laws were applicable given the relevant contract's choice of law provision specifying that New Jersey law governed the contract).

MHA also fails to point to any case law suggesting that these laws are applicable to this dispute, and therefore the Court declines to extend the reach of these laws here. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 519 (8th Cir. 2018) (citing *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009) ("[i]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent")).

In Count IV, MHA states that Express Scripts breached the Contract by violating the federal prompt pay law at 42 U.S.C. § 1395w-112(b)(4) and Missouri's prompt pay law at Mo. Rev. Stat. § 376.383 as well as unspecified prompt pay laws of many other states. Like the state laws cited in Count III, these laws are not referenced in the parties' Contract. Thus, the prompt pay laws are not incorporated into the Contract. Further, MHA's failure to specify which prompt pay laws of the multiple states allegedly at issue, where the parties' rights and obligations are governed by Missouri law under the Contract, also falls short of basic notice pleading requirements. *See, e.g., Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true when considering a motion to dismiss,

6

the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). For these reasons, the Court will grant Express Scripts' motion to dismiss with respect to Counts III and IV.

Breach of Contract – Federal Any Willing Provider Law (Count V)

Count V of MHA's Amended Complaint alleges in part that:

> The parties entered into a contractual relationship by way of the Contract, which requires that Express Scripts adhere to applicable federal and state law. Pursuant to 42 U.S.C. § 1395w-104(b)(1)(A), Congress has enacted a federal "Any Willing Provider Law." The Any Willing Provider Law applies directly to Medicare programs. CMS contracts with Medicare Part D plan sponsors to administer enrollee's prescription drug benefits. 42 U.S.C. § 1395w-112, et seq. Medicare Part D plan sponsors can delegate certain administrative obligations with "first tier entities", including PBMs such as Express Scripts. The federal Any Willing Provider Law therefore applies to PBMs like Express Scripts.

ECF No. 29 at 61 (paragraph numbers omitted).

MHA argues that Section 7.1 in Express Scripts' Provider Manual sets forth the requirement to "adhere to applicable federal and state law." Express Scripts disputes that the Provider Manual is part of the Contract, but even assuming arguendo that it is, MHA's summary of what the Provider Manual requires is misleading. The Provider Manuel does explicitly cite to 42 CFR § 423.505(i) but does not provide the language that Express Scripts "adhere to applicable federal and state law." Rather, the relevant language states, "Medicare Part D sponsors retain ultimate responsibility to comply with terms of their CMS contract. 42 CFR § 423.505(i)." ECF No. 25-9 at 3.

As detailed above, the intent to incorporate terms into a contract by reference must be clear. *Morgantown Mach. & Hydraulics of Ohio, Inc.*, 887 F.3d at 415. Further, "mere reference" to another document does not establish a clear intent to incorporate that document. *See, e.g., Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. 2003) (en banc).

MHA argues that this Court incorrectly ruled in a previous case, *Life Star Pharmacy, Inc.*

7

*v. Express Scripts, Inc.*, No. 4:23CV186 JAR, 2024 WL 940365 (E.D. Mo. Mar. 4, 2024), that an identical provision did not incorporate a requirement for Express Scripts itself to also comply with Section 505(i) and all applicable federal and state law. MHA also cites *Trone Health Services, Inc. v. Express Scripts Holding Co.*, 974 F.3d 845 (8th Cir. 2020) to support the idea that its Contract with Express Scripts incorporated requirements to adhere to applicable federal and state law. *Trone Health*, however, is distinguishable, as the relevant provision incorporating The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") into the parties' contract *expressly* stated:

> ESI shall and Provider shall, and shall cause its Pharmacies to, comply with all federal and state laws, rules and regulations regarding the confidentiality of patient information, *including, but not limited to, compliance with . . . HIPAA* and the . . . HITECH Act, *including all applicable rules, regulations and official guidance promulgated, in connection with HIPAA* and the HITECH Act . . . .

*Id.* at 850 (emphasis added).

In contrast with *Trone Health*, MHA is unable to show a clear intent to incorporate the federal Any Willing Provider ("AWP") law into the parties' Contract. MHA has not established incorporation with the supposed obligation to "adhere to applicable federal and state law" because 42 CFR § 423.505(i), which references an obligation to comply with such laws, is referenced in the Provider Manual. No language in the Contract sets out which laws are intended to be applicable, nor is the AWP law clearly referenced. Therefore, MHA fails to sufficiently plead that Express Scripts breached the Contract by violating the AWP law. *See, e.g., Life Star Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:23CV186 JAR, 2024 WL 940365, at *4 (E.D. Mo. Mar. 4, 2024); *Rice v. St. Louis Univ.*, No. 4:19CV3166 SEP, 2020 WL 3000431, at *5 (E.D. Mo. June 4, 2020); *AB Realty One, LLC v. Miken Techs., Inc.*, 466 S.W.3d 722, 732 (Mo. App. E.D. 2015). For these reasons, the Court will grant Express Scripts' motion to dismiss with respect to Count V.

Breach of Contract – Market Check Provision (Count VI)

The "Market Check" provision of the parties' Contract contains the following:

**Market Check**. Except as may otherwise be agreed to by [Express Scripts] and MHA, the parties agree that they shall meet annually to review the reimbursement terms applicable to MHA's Long Term Care Pharmacies set forth in this Exhibit A, inclusive of all value components with the intent of such review being to ensure that MHA's Long Term Care Pharmacies reimbursement remains competitive against other Similar Providers. 'Similar Providers' includes independent Long Term Care Pharmacies and organizations that contract collectively on behalf of Long Term Care Pharmacies (such as group purchasing organizations, Pharmacy Services Administrative Organizations or other similar network administrators) who have a claims volume that is less than or equal to MHA's and a similar claims mix and AWP of Long Term Care Claims and Non-Long Term Care Claims compared to MHA's. In the event that the review determines that MHA's reimbursement terms are no longer competitive in the marketplace compared to Similar Providers, the parties shall negotiate in good faith an amendment to this Exhibit A.

ECF No. 25-2 at 10-11.

Under Missouri law, an "agreement to agree at some time in the future 'is a nullity.'" *Deichmann v. Boeing Co.*, 38 F. Supp. 2d 783, 786 (E.D. Mo. 1998) (quoting *Jenks v. Jenks*, 385 S.W.2d 370, 376 (Mo. App. 1964)). A provision in a contract that leaves rates and other terms to future determination are unenforceable as either agreements to agree or illusory promises. *Allied Disposal, Inc. v. Bob's Home Serv., Inc.*, 595 S.W.2d 417, 419–20 (Mo. App. E.D. 1980); *Green St. 2900 Invs., LLC v. St. Louis Woodworks, Inc.*, 654 S.W.3d 380, 390 (Mo. App. E.D. 2022). Put differently, if "the essential terms of the option are expressly left open for future negotiation, the clause creates merely an agreement to agree and is unenforceable under Missouri law." *U.S. v. 518.77 Acres of Land, More or Less, Situated in Henry Cnty.,* 545 F. Supp. 1246, 1248 (W.D. Mo. 1982).

The Court finds that the "Market Check" provision at issue here is unenforceable. Specifically, the provision only requires that the parties meet annually to review reimbursement terms, and in the event they are no longer competitive, that the parties negotiate in good faith an

9

amendment to the Contract. There are no express terms or rates that were agreed to in the "Market Check" provision, as they were explicitly left open for future negotiation. The provision is therefore unenforceable under Missouri law. Accordingly, the Court will grant Express Scripts' motion to dismiss with respect to Count VI.

<u>Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VII)</u>

"Missouri law implies a covenant of good faith and fair dealing in every contract." *Kmak v. Am. Century Cos., Inc.*, 754 F.3d 513, 516 (8th Cir. 2014) (quoting *Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. 1998) (en banc)). "To establish a breach of the covenant of good faith and fair dealing, the plaintiff has the burden to establish that the defendant exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny the plaintiff the expected benefit of the contract." *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 9-10 (Mo. App. W.D. 2013) (internal citation and quotation omitted). To plead such a breach, the plaintiff must show that the defendant "exercised its discretion in a manner contrary to good faith and fair dealing." *Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 48 (Mo. App. W.D. 2002).

The breach of the implied covenant of good faith and fair dealing claim is related to the breach of contract claims, as Count VII of the Amended Complaint clearly references those claims. Express Scripts argues this claim must be dismissed because MHA fails to identify a contractual provision that Express Scripts misused in bad faith. But as noted above, MHA identifies certain contractual provisions in Counts I and II of the Amended Complaint. Moreover, MHA adequately alleges that Express Scripts exercised its judgment under the Contract in such a manner as to deny MHA an expected benefit by failing to make accurate payments. The Court is not in a position to review the merits of this claim on a motion to dismiss. *See HM Compounding Services, Inc. v. Express Scripts, Inc.*, No. 4:14-CV-1858 JAR, 2015 WL 4162762, at *14 (E.D.

10

Mo. July 9, 2015). As this claim is related to the breach of contract claims, the Court finds Count VII is sufficiently pled and will accordingly deny Express Scripts' motion to dismiss the same.

<u>Tortious Interference with Contractual and Business Relationship (Count VIII)</u>

Under Missouri law, the plaintiff must establish five elements to sustain a claim for tortious interference with contractual or business relations: (1) a contract or valid business relationship or expectancy; (2) knowledge by the defendant of the contract or relationship; (3) intentional interference by the defendant which induces the breach of contract or relationship; (4) the absence of justification; and (5) resulting damages. *Francisco v. Kansas City Star Co.*, 629 S.W.2d 524, 529 (Mo. App. W.D. 1981).

Here, MHA's Amended Complaint contains no facts supporting the allegation that "intentional interference" by Express Scripts induced a breach of contract or relationship between MHA and its pharmacies in the MHA Membership. Rather, the Amended Complaint only states that Express Scripts' "intentional interference has caused a breach and threatens to cause additional breaches to MHA's existing business and contractual relationships and expectations with its Membership." ECF No. 29 at 65. Such a statement is no more than "a conclusory, 'formulaic recitation' of the third element and 'will not do.'" *Top Gun Ammo Sales, LLC v. COF Techs., LLC*, No. 4:21-cv-00770-SEP, 2022 WL 823061, at *11 (E.D. Mo. Mar. 18, 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Quality Res., Inc. v. Pfizer, Inc.*, No. 4:14-CV-1149 CEJ, 2015 WL 417997, at *4 (E.D. Mo. Jan. 30, 2015), aff'd, 622 F. App'x 606 (8th Cir. 2015). As MHA's Amended Complaint does not present minimal factual support showing that Express Scripts induced any of the pharmacies in the MHA Membership to breach its contract or change its relationship with MHA, the Court will grant Express Scripts' motion to dismiss with respect to Count VIII for failure to state a claim.

Violation of Missouri and Federal Trade Secrets Acts (Counts IX and X)

The Missouri Uniform Trade Secrets Act ("MUTSA") and the federal Defend Trade Secrets Act ("DTSA") are essentially identical, so the Court will analyze the claims together. *See, e.g., MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1017 n.1 (8th Cir. 2020) (analyzing Minnesota Uniform Trade Secrets Act and DTSA together because parties did not identify any differences). Under both Acts, the plaintiff must show: "(1) the existence of a protectable trade secret; (2) misappropriation of those trade secrets by the defendant; and (3) damages." *Phyllis Schlafly Revocable Tr. v. Cori*, No. 4:16CV01631 JAR, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016).

"A trade secret is information that the owner thereof has taken reasonable measures to keep . . . secret and that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Ahern Rentals, Inc. v. EquipmentShare.com*, Inc., 59 F.4th 948, 955 (8th Cir. 2023) (citing 18 U.S.C. § 1839(3) and Mo. Rev. Stat. § 417.453(4) (internal quotation marks omitted). Misappropriation occurs when one acquires a trade secret through improper means or discloses a trade secret without consent despite knowing or having reason to know that the secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683 (8th Cir. 2002).

At this stage, the Court must accept the Amended Complaint's factual allegations as true. The Amended Complaint sufficiently alleges that the identity, enrollment status, and contractual relationship of the pharmacies in the MHA Membership are not public knowledge and that Express Scripts misappropriated that "trade secret" information by using the information in sending solicitations to the pharmacies in the MHA Membership, resulting in damages. Express

12

Scripts maintains that this information does not constitute a protectable trade secret and that the information was not disclosed to anyone outside of the pharmacies themselves. It is not appropriate for the Court to attempt to parse out this factual dispute at this stage of the proceedings, and thus Express Scripts' motion to dismiss with respect to Counts IX and X will be denied.

### Breach of Contract – Misuse of Confidential Information (Count XI)

The parties' Contract includes the following confidentiality provision:

> Each party acknowledges and agrees that it will have access to, or become acquainted with, Confidential Information of the other party in connection with this Agreement. For purposes of this Agreement, "Confidential Information" shall mean all confidential, proprietary, or trade secret information, property, or material of a party and any derivatives, portions, or copies thereof, including, without limitation, information resulting from or in any way related to (i) the Services; (ii) the business practices, plans, or relationships of the party; and (iii) any other information or material that the party designates as Confidential Information. Each party shall keep all Confidential Information of the other party in strict confidence and shall not, at any time during or for three (3) years after the expiration or earlier termination of this Agreement. without the disclosing party's prior written consent, disclose, publish, disseminate or otherwise make available, directly or indirectly, any item of Confidential Information to anyone. Each party shall use the Confidential Information of the other party only in connection with the performance of the Services and for no other purpose.

ECF No. 25-1 at 4.

As detailed above, to sufficiently state a claim for breach of contract, the plaintiff must show: "(1) the existence and terms of a contract including certain rights and obligations between the parties; (2) the defendant breached his obligation under the contract; and (3) the plaintiff suffered damages from the breach." *Reddick v. Spring Lake Estates Homeowner's Association*, 648 S.W.3d 765, 782 (Mo. App. E.D. 2022).

It is plain that the parties' Contract allows Express Scripts to send materials directly to MHA pharmacies, as the Contract includes an agreement by MHA to send such materials presented by Express Scripts "not otherwise sent directly to Providers." ECF No. 25-1 at 3. By

13

virtue of the Contract, therefore, Express Scripts is permitted to know the identities and contact information of the pharmacies and may send materials and other documentation directly to the pharmacies.

Under the applicable standard of review, however, the Court must view all reasonable inferences in favor of the plaintiff. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). MHA alleges that Express Scripts' "misuse and misappropriation" of the identities, contact information, and contractual relationships of the pharmacies, which MHA maintains constitutes "Confidential Information" under the Contract, is what specifically breached the Contract and resulted in damages. Based on the foregoing, and because all reasonable inferences from the allegations in the Amended Complaint must be viewed in favor of MHA, the Court finds that MHA sufficiently alleges facts that, if true, meet the elements of a breach of contract claim against Express Scripts. Accordingly, the Court will deny Express Scripts' motion to dismiss with respect to Count XI.

Declaratory Judgment (Count XII)

"Where a party's declaratory judgment claim is purely duplicative of its breach of contract claim, the declaratory judgment claim may be properly dismissed." *HHCS Pharm., Inc. v. Express Scripts, Inc.*, No. 4:16–CV–1169 (CEJ), 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016) (internal citations omitted). "However, the mere fact that claims for declaratory judgment and breach of contract are closely related—even where the declaratory judgment claim 'encompasses' the breach of contract claim—does not require dismissing the declaratory judgment claim." *Id.* (quoting *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 882 (D. Minn. 2009)).

MHA's claims for declaratory judgment and breach of contract are closely related, but the declaratory judgment claim seeks the additional relief of determining the parties' rights and

14

responsibilities under the Contract, as well as the rights, obligations, and liabilities of the parties with regard to future conduct. *See MidCountry Bank v. Rajchenbach*, No. 15-CV-3683 (SRN/TNL), 2016 WL 3064066, at *4 (D. Minn. May 31, 2016) ("In short, the declaratory judgment claim will establish what the Defendants' obligations are while the breach of contract claim will resolve whether Defendants breached those obligations in a particular instance."). *See also Flowshare, LLC v. TNS, US, LLC*, No. 4:16-CV-00300-JAR, 2017 WL 3174321, at *6 (E.D. Mo. July 26, 2017). As this claim seeks additional relief beyond the scope of the breach of contract claims and is thus not duplicative, the Court will deny Express Scripts' motion to dismiss with respect to Count XII.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Express Scripts' motion to dismiss [ECF No. 33] is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Counts III, IV, V, VI, VIII, which are **DISMISSED without prejudice**. The motion is **DENIED** as to Counts I, II, VII, IX, X, XI, and XII.

Dated this 10th day of January, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE